**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jonathan Scarborough, | Civil No. 15-1633 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| Federated Mutual Insurance Company, | |
| Defendant. | |

David H. Redden, Esq., and John A. Fabain, Esq., Fabian May & Anderson PLLP, counsel for Plaintiff.

Britt M. Gilbertson, Esq., Danielle W. Fitzsimmons, Esq., and Gregory J. Stenmoe, Esq., Briggs & Morgan, PA, counsel for Defendant.

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Federated Mutual Insurance Company (generally, "Federated"). (Doc. No. 77.) Plaintiff Jonathan Scarborough filed a claim against Federated alleging that he was terminated in violation of Minnesota's Whistleblower Act ("MWA"), Minnesota Statute §§ 181.931–.932. Additionally, Federated moves for summary judgment for its counterclaim for breach of a forum selection clause. For the reasons set forth below, the Court grants the motion in part.

# BACKGROUND

Until recently, Scarborough was a Regional Marketing Manager ("RMM") for Federated. (Doc. No. 84 ("Redden Decl.") ¶ 3, Ex. 1. ("Scarborough Dep.") at 12; Redden Decl. ¶ 3, Ex. 2 ("Kerr Dep.") at 23.) He had held that position since 2012. (*Id.*) Scarborough supervised six District Marketing Managers ("DMM"). (Doc. No. 85 ("Scarborough Decl.") ¶ 2.) Scarborough's role as RMM included reviewing and approving DMMs' expense reports. (Doc No. 80 ("Fitzsimmons Aff.") ¶ 2, Ex. 15.)

One of Scarborough's DMMs was Frederick Johnston. (Scarborough Dep. 46.) On July 1, 2014, Johnston's assistant submitted Johnston's expense report for his company credit card. (Fitzsimmons Aff. ¶ 2, Ex. 16.) The report included a personal expense for custom framing. (*Id.*) The next day, the Marketing Administration Manager Rhonda Kath e-mailed Johnston about the framing expense. (Redden Decl. ¶ 2, Ex. 7 ("Kath Dep.") at 28.) Johnston lied to Kath about the expense, claiming that it was for laminating services or printer ink. (*Id.* at 25.) Unconvinced, Kath inquired directly with the store and learned that the expense was for framing pictures of Johnston's European vacation. (*Id.* at 35.)

With the lie rooted out, Kath e-mailed her supervisor, who brought in Scarborough's supervisor Michael Pennington. (Fitzsimmons Aff. ¶ 2, Exs. 18 & 19.) Pennington then updated Scarborough. (Fitzsimmons Aff. ¶ 2, Ex. 19.) When Pennington and Scarborough spoke about Johnston's frame expense, Scarborough mentioned that Johnston liked expensive things, including that, "Johnston liked to hold meetings at the law offices of Husch Blackwell, even though he could probably find a

less expensive venue to hold the meetings." (Doc. No. 38 ("Second Amended Compl.") ¶ 10.) Pennington replied, "What are you talking about? [Johnston] gets those meeting rooms for free." (Scarborough Dep. at 69.) Scarborough explained that Johnston had been submitting invoices for those meetings. (*Id.*) Their conversation ended with Scarborough telling Pennington that he would investigate the issue further. (*Id.* at 52.)

On July 14, 2014, Scarborough exchanged e-mails with Husch Blackwell, which confirmed that the meetings were free. (Fitzsimmons Aff. ¶ 2, Ex. 21.) Scarborough forwarded the e-mails to Pennington, and they agreed to talk with Johnston about the invoices in addition to the framing expense. (*Id.*)

On July 21, 2014, Scarborough and Pennington met with Johnston. (Scarborough Dep. at 87–88; Redden Decl. ¶ 3, Ex. 3 ("Pennington Dep.") at 109.) Prior to the meeting, Pennington asked if Scarborough had prior knowledge about the false invoices, and Scarborough denied it. (*See* Fitzsimmons Aff. ¶ 2, Ex. 27.) In the meeting, Johnston admitted to everything—to the falsified invoices and to the custom framing. (Pennington Dep. at 109–110.) Later that day, Johnston called Pennington to tell him that Scarborough had known about Johnston's scheme "from the very beginning" and that Scarborough had convinced Braxton Weaver to do the same thing. (Fitzsimmons Aff. ¶ 2, Ex. 27; Redden Decl. ¶ 3, Ex. 5 ("Johnston Dep.") at 170–72.) Federated would later determine that Johnston had expensed Husch Blackwell meetings since July 2012, including a few invoices that occurred before Scarborough began supervising Johnston. (*See* Pennington Dep. at 60-61.)

On July 24, 2014, Scarborough met with Pennington and Pennington's supervisor Mike Kerr. (Fitzsimmons Aff. ¶ 2, Ex. 27.) At the July 24 meeting, Kerr asked Scarborough about whether he had prior knowledge of Johnston's invoicing practice. Again, Scarborough denied having any prior knowledge. (*Id.*)

Pennington and Kerr continued to investigate whether other DMMs had also falsified invoices. Pennington spoke with Weaver on July 24, 2014. (Pennington Dep. at 135.) Weaver apparently confirmed that Scarborough had told Weaver to contact Johnston about falsifying invoices. (Redden Decl. ¶ 3, Ex. 6 ("Weaver Dep.") at 61.) Then Weaver repeated that Scarborough knew about the fraudulent scheme in a later meeting with both Kerr and Pennington. (Kerr Dep. 56–57; Weaver Dep. 67–71.)

On July 30, 2014, Scarborough met again with Kerr and Pennington. (Kerr Dep. at 70.) At the meeting, Scarborough allegedly told Pennington and Kerr that Federated likely violated tax laws because it had not applied the proper withholdings to the funds that Johnston had taken. (Doc. No. 83 ("Pl.'s Opp.") at 12; Scarborough Decl. ¶ 10.) Neither Kerr nor Pennington remembers Scarborough bringing up tax violations or other illegalities related to Johnston's false invoices. (Kerr Dep. at 86; Pennington Dep. at 165–66.)

On August 4, 2014, Pennington, Scarborough, and Johnston met. (Scarborough Dep. at 110.) At this point, Pennington wanted to keep Johnston at Federated, while Scarborough wanted Johnston fired. (Scarborough Decl. ¶ 3.) Instead, Johnston was offered a choice of resigning or being demoted. (Fitzsimmons Aff. ¶ 2, Ex. 28.) After Johnston left the meeting, Pennington issued a warning letter to Scarborough because

4

Scarborough continued to deny his prior knowledge of Johnston's fraudulent scheme. (Fitzsimmons Aff. ¶ 2, Ex. 29.)

After the August 4 warning letter, from Federated's perspective, Scarborough was on thin ice. (*Id.* ("[A]ny future misconduct will likely result in the termination of your employment with Federated.").) And by August 20, 2014, Federated would demote and then ultimately fire Scarborough. What happened between August 4 and August 20 depends on the party you ask. According to Scarborough, Pennington manufactured evidence to create grounds to have Scarborough fired. (Doc. No. 79 ("Def.'s Memo.") at 13–18.) According to Federated, after August 4, it learned that Scarborough had charged personal expenses to his company credit card and that Scarborough began spreading rumors that DMMs were being fired.[1] (Pl.'s Opp. 19–23.)

On December 26, 2014, Scarborough filed suit in District Court of Johnston County, Kansas. (Doc. No. 1-1.) The complaint alleged claims for unjust enrichment and breach of an implied contract. (*Id.*) Federated removed the case to the United States District Court for the District of Kansas. (Doc. No. 1.) Federated then sought to have the case transferred to the District of Minnesota. (Doc. No. 9.) In its motion to transfer, Federated argued that Scarborough's claims were governed by a forum selection clause in his RMM Employment Agreement. (*See* Doc. No. 76-1.) Scarborough opposed the transfer. (Doc. No. 10.) The Kansas court concluded that Scarborough's claims were

---

[1] A fuller summary of the facts leading up to Federated terminating Scarborough's employment is not necessary for the Court to resolve Federated's motion, but additional details can be found in the parties' briefing.

subject to a valid forum selection clause and transferred the case. (Doc. No. 14.) Plaintiff did not appeal that order.

Plaintiff then amended his complaint twice. (Doc. Nos. 32 & 38.) Scarborough's Second Amended Complaint, the one at issue here, alleges a single claim for breach of the MWA. (Doc. No. 38.) In its Answer, Federated counterclaimed for breach of the RMM Employment Agreement's forum selection clause. (Doc. No. 39.) [2]

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at

---

[2]  Plaintiff later filed a separate lawsuit in the Western District of Missouri, Case No. 4:16-cv-00505-REL. That complaint alleges that Pennington, Johnston, and Weaver defamed Scarborough and tortuously interfered with his employment contract with Federated. (Fitzsimmons Aff. ¶ 2, Ex. 47.)

747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Summary Judgment

### A.   MWA claim

The Minnesota Whistleblower Act ("MWA") prohibits retaliation by an employer when, among other things, an employee, "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer . . . ."  Minn. Stat. § 181.932, subd. 1.  Courts interpret MWA claims narrowly.  *Pedersen v. Bio-Med. Applications of Minn.*, 992 F. Supp. 2d 934, 941 (D. Minn. 2014) ("The Minnesota Supreme Court has cautioned 'against construing section 181.932 too broadly.'" (quoting *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 22 (Minn. 2009)), *aff'd*, 775 F.3d 1049 (8th Cir. 2015).

The first step for an MWA claim is determining whether the employee engaged in statutorily protected conduct by, in this case, reporting in good faith a violation or suspected violation of any federal or state law or common law or rule to his employer. *See, e.g.*, *Pedersen*, 992 F. Supp. 2d at 939.  The plaintiff has the burden of demonstrating that he engaged in statutorily protected conduct.  *Id.*

Here, Defendant argues that Scarborough's statements were not "reports." Until 2013, "report" and "good faith" had been defined by courts. But in 2013, the Minnesota Legislature amended the MWA to define both terms. Now report is defined as, "a verbal, written, or electronic communication by an employee about an actual, suspected, or planned violation of a statute, regulation, or common law, whether committed by an employer or a third party." Minn. Stat. § 181.931 subd. 6. Whether a statement constitutes a "report" under the MWA is a question of law. *E.g.*, *Borgersen v. Cardiovascular Sys., Inc.*, 729 N.W.2d 619, 624 (Minn. Ct. App. 2007); *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

Under earlier case law, to be considered a whistleblower, the employee must have had the proper purpose of exposing an illegality. *Obst v. Microtron, Inc.*, 614 N.W.2d 196, 202 (Minn. 2000). The court looked at both the substance of the statement and the employee's purpose for making the statement. *Freeman v. Ace Tel. Ass'n*, 404 F. Supp. 2d 1127, 1139 (D. Minn. 2005) (citing *Obst*, 614 N.W.2d at 202), *aff'd sub nom. Freeman v. Ace Tel. Ass'n.*, 467 F.3d 695 (8th Cir. 2006). Although the employee did not need to identify a specific statute or rule to report a violation, the employee must state "facts that, if proven, would constitute a violation of law or rule adopted pursuant to law." *Abraham v. Cty. of Hennepin*, 639 N.W.2d 342, 354–55 (Minn. 2002). As a result, courts concluded that an employee did not make a report when, among other things, the employer already knew about the misconduct or when the report was part of the employee's job duties. *Hitchcock v. FedEx Ground Package Sys., Inc.*, 442 F.3d 1104, 1106 (8th Cir. 2006) ("Hitchcock had no whistle to blow because she reported to FedEx

8

only what it already knew."); *Pedersen*, 992 F. Supp. 2d at 939 ("Reporting what an employer already knows exposes nothing—the employee simply has no whistle to blow in that circumstance." (internal quotations mark omitted)); *Freeman*, 404 F. Supp. 2d at 1139 ("A report that is presented as part of an employee's job duties is not a report under the Act.").

Plaintiff argues that the 2013 amendment abrogated this prior case law defining "report." Thus, under Plaintiff's interpretation, any good faith report counts—i.e., anytime the employee identifies a violation that he does not know is false or that is not made with a reckless disregard for the truth. (Pl.'s Opp at 30.) Plaintiff, however, cites to no case that finds the definitions abrogate the prior case law. Indeed, much of the case law interpreting the 2013 amendment is against him. *See, e.g.*, *Becker v. Jostens, Inc.*, Civ. No. 14-5104, 2016 WL 5402189, at *13 (D. Minn. Sept. 26, 2016) (granting employer's summary judgment as to the employee's MWA claim because the purpose of the employee's report was not to expose an illegality); *Pedersen*, 992 F. Supp. 2d at 938; *Childs v. Fairview Health Servs.*, Civ. No. A16-0849, 2016 WL 6923709, at *1 (Minn. Ct. App. Nov. 28, 2016). *But see Friedlander v. Edwards Lifesciences, LLC*, Civ. No. 16-1747, 2016 WL 7007489, at *5 (D. Minn. Nov. 29, 2016) (certifying the question of whether the 2013 amendment abrogated the requirement of a proper purpose). For instance, the Minnesota Court of Appeals in an unpublished opinion explicitly rejects the argument that the amendment abrogated the prior case law. *Childs*, 2016 WL 6923709, at *1 ("The clarification to the definition of good faith does not erase the common-law interpretation of a statutorily protected report."). Thus, absent contrary authority, the

Court concludes that the 2013 amendment did not abrogate the requirements that, to be cloaked with the protections of the MWA, the employee must make his report be for the purpose of exposing an illegality. Thus, Scarborough's statements must have been reports for the proper purpose.

Here, Scarborough alleges that he made three reports. First, Scarborough argues that he reported a violation on July 7, 2014, when he told Pennington that Johnston liked fancy things, including paying for meeting rooms at Husch Blackwell. (Pl.'s Opp. at 26.) Second, Scarborough argues that he reported a violation on July 14, 2014, when he forwarded an e-mail from Husch Blackwell confirming that the meetings were free. (*Id.*) And third, Scarborough argues that he reported a violation on July 30, 2014, when he allegedly told Pennington and Kerr that Johnston's invoicing practice was illegal and that Federated was violating tax law related to Johnston's withholding taxes. (*Id.* at 26-27.)

To start, Scarborough's July 7 and July 14 statements were not reports because they were part of his job duties. An employee is not entitled to whistleblower protection when the report is part of his job duties. *Freeman*, 404 F. Supp. 2d at 1139 ("A report that is presented as part of an employee's job duties is not a report under the Act."). Here, Scarborough's job included reviewing and approving expense reports. Thus, discovering inappropriate expenses, like Johnston's falsified invoices, was part of his job duties. Scarborough's July 7 and July 14 statements, therefore, were not reports under the MWA.

Scarborough's only remaining statement—the one on July 30—also was not a report because by then Federated knew about the misconduct. With minor exception not

relevant here,[3] an employee is not entitled to MWA protection when he reports a violation that the employer is already aware of or by pointing out that a past practice did not conform with the law. *E.g.*, *Pedersen*, 992 F. Supp. 2d at 939 ("Reporting what an employer already knows exposes nothing—the employee simply has no whistle to blow in that circumstance." (internal quotations mark omitted)); *Freeman*, 404 F. Supp. 2d at 1139; *Cokley v. City of Otsego*, 623 N.W.2d 625, 631 (Minn. Ct. App. 2001) ("As a matter of law, this non-specific reference to past practices not in conformance with the FLSA is insufficient.").

Here, on July 30, Scarborough allegedly told Pennington and Kerr that Federated may have violated tax laws by not withholding the proper amount. But by July 30, Johnston had already confessed that he falsified the Husch Blackwell invoices, which he would later repay. (*See* Pennington Dep. at 192; Kerr Dep. at 24 ("The debt was paid. [Johnston] repaid us.").) Because Federated was already aware of Johnston's misconduct and had put a stop to it, Scarborough's additional statement regarding the practice does not constitute a report.

Alternatively, Scarborough has failed to demonstrate that the allegations he made on July 30 constituted a violation of federal law. Specifically, Scarborough alleges that

---

[3] "To be sure, Minnesota courts have recognized that an employer's prior knowledge of a violation at the time of an employee's report does not *necessarily* exempt the employer from liability . . . . [L]iability may exist despite the employer's prior knowledge [when]: (i) an employee reports the violation to an outside government official or law enforcement entity, or (ii) an employee reports the violation to her employer without knowledge that the employer already was aware of it." *Pedersen*, 992 F. Supp. 2d at 940 (citing *Obst*, 614 N.W.2d at 203 n.5) (internal citations omitted).

Federated could have violated tax laws by failing to withhold the proper amount from Johnston. (Pl.'s Opp. at 27.) To support this argument, Plaintiff cites to four provisions of the tax code and appears to argue that Johnston's stolen funds were "wages," which trigger's Federated's withholding obligations. But Plaintiff provides no support that stolen funds that are later repaid constitute "wages" under the tax code. *See* 26 U.S.C. § 3401(a) ("[W]ages means all remunerations . . . for services performed by an employee for his employer."). Scarborough's July 30 statement, therefore, was not a report because Plaintiff has failed to demonstrate that Scarborough's articulations of the facts constituted a violation of the tax code. Accordingly, for this separate reason, Scarborough's July 30 statement does not constitute a report. Thus, because Scarborough has failed to show that his statements to Federated constituted a "report" under the MWA, Federated is entitled to summary judgment.

### B. Contract Claim

Federated also moves for summary judgment for its counterclaim for breach of the RMM Employment Contract. Specifically, Federated moves to recoup the attorney fees that it incurred to have the case transferred from Kansas to Minnesota.

The elements of a claim for breach of contract are well known: the non-breaching party must show that "(1) a contract was formed, (2) the plaintiff performed the conditions precedent, (3) the defendant breached the contract, and (4) damages resulted from the defendant's breach." *Datalink Corp. v. Perkins Eastman Architects, P.C.*, Civ. No. 13-2978, 2015 WL 3607784, at *3 (D. Minn. June 8, 2015) (citing *Thomas B. Olson*

*& Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)).

Here, much of the work has been done in the District of Kansas's order granting a transfer. In that order, the court found a valid contract that required Scarborough to file his complaint in Minnesota. (Doc. No. 14.) Scarborough did not appeal this decision. *See In re Union Elec. Co.*, 787 F.3d 903, 908 (8th Cir. 2015) ("[W]e have permitted the use of petitions for writs of mandamus or prohibition to review, in a narrow fashion, the propriety of district court rulings on § 1404(a) motions."). Further, Scarborough does not point to any reason why the Kansas court erred. *See Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 238 (S.D.N.Y. 2011) (concluding that the breaching party could not relitigate the validity of the forum selection clause during the subsequent claim for breach of contract unless the breaching party demonstrates why the court should not follow the transferring court's decision). Indeed, in his brief, Scarborough merely attempts to relitigate what has already been decided in the transfer order: Scarborough's equitable claims arose from or related to his RMM employment agreement, which remained in effect on the date he was fired. (*See* Pl.'s Opp. at 41-42.) Because those issues have already been decided, this Court will not revisit them. Thus, Federated has demonstrated a valid contract existed between the parties.

Next, Federated has demonstrated a breach of the agreement. Filing an applicable claim outside of the designated forum is a cognizable breach of the forum selection clause. *Versatile Housewares*, 819 F. Supp. 2d at 239. Here, Scarborough filed claims

covered by the forum selection clause outside of the designated forum.  (*See* Doc. No. 14.)  Thus, Scarborough breached his RMM Employment Agreement.

Having found a breach of contract, the only remaining issue is damages.  The only damages that Federated seeks are its attorney fees related to the transfer.  Scarborough argues that such damages are not compensable for a breach of contract.  (Pl.'s Opp. at 42.)  As a general matter, under Minnesota law, parties must pay their own attorney fees absent a specific statute or contract.  *E.g.*, *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008); *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn. 1983).  Here, the RMM Employment Contract explicitly provides for attorney fees:

> The Regional Marketing Manager also agrees that in the event a suit or action is instituted by Federated against the Regional Marketing Manager for violation of any of the agreements contained in this Agreement, **Regional Marketing Manager will pay to Federated**, in addition to any costs and reimbursements provided by law, an additional sum in lawful money as set by the court, **for attorney fees** and other expenses of litigation.

(Doc. No. 76-1 at ¶ 10(c). (emphasis added).)[4]  Thus, Federated is entitled to attorney fees for a breach of the forum selection clause.

But even when a contract provides for attorney fees, the fees must be reasonable. *Amerman v. Lakeland Dev. Corp.*, 203 N.W.2d 400, 400 (Minn. 1973).  Here, Federated has provided no evidence that the attorney fees were reasonable.  *See, e.g.*, *HazTran, Inc. v. German, Neil & Hasbrouck, Ltd.*, No. Civ. No. 00-1798, 2001 WL 741246, at *3

---

[4]  Plaintiff also argues that this clause has not been triggered because Federated has not "instituted" an action.  The Court, however, agrees with Federated that it instituted the action by filing the counterclaim.

(Minn. Ct. App. July 3, 2001) ("Many factors should be considered in determining the reasonableness of attorney fees, including the 'time and effort required, value of the interest involved, and results secured at trial.'"); *see also Honeywell, Inc. v. Ruby Tuesday, Inc.*, 43 F. Supp. 2d 1074, 1077 n.1 (D. Minn. 1999). Without information supporting the reasonableness of the fees incurred, the Court cannot award Federated the attorney fees that it seeks. Instead, within 30 days of this Order, the parties will each submit briefing not to exceed five (5) pages regarding why the submitted fees are or are not reasonable. The Court reserves the right to schedule the matter for a hearing.

## CONCLUSION

For the foregoing reasons, the Court grants Federated's motion for summary judgment as to Scarborough's MWA claim. The Court also grants Federated's motion for summary judgment as to Federated's counterclaim, subject to a finding upon proper documentation that the attorney fees are reasonable. Given that there is another pending action in Missouri regarding Scarborough's termination at Federated, the Court suggests that it is in the best interests of the parties to negotiate a solution of this dispute. As the parties are aware, Magistrate Judge Franklin L. Noel is available to assist in the negotiation of a settlement should the parties find such services helpful. Now, therefore, **IT IS HEREBY ORDERED** that:

1. Defendant Federated Mutual Insurance Company's Motion for Summary Judgment (Doc. No. [77]) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. Defendant's Motion is **GRANTED** as to Count I of Plaintiff's Second Amended Complaint (Doc. No. [38]). Therefore,

Plaintiff's Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

  b. Defendant's Motion is **GRANTED** as to Defendant's Counterclaim (Doc. No. [76]), subject to the parties' submission as to the reasonableness of the attorney fees and a finding by the Court that the attorney fees are reasonable.

 2. Within thirty (30) days of this Order, the parties will submit briefing and other documentation to demonstrating why Defendant's requested attorney fees are or are not reasonable.  The briefing shall not exceed five (5) pages.  The Court reserves the right to hold a hearing on the issue.

Dated:  February 1, 2017     s/Donovan W. Frank
                DONOVAN W. FRANK
                United States District Judge